This is an age-discrimination case brought by a former general manager for a food-service company. We must decide if he presented enough evidence of discrimination to withstand the company's motion for summary judgment, which was granted by the trial court. We conclude that he did not and affirm.
 I. Background
Defendant-appellee Compass Group USA, Inc., is a company that provides food service. It holds contracts for food service, including student meals, with the University of Cincinnati (UC). Plaintiff-appellant Clyde E. Moon was a twenty-six-year employee of Compass and its predecessors. For the last twelve years of his employment, he was a general manager assigned to UC's main campus. His duties included the management and provision of a dining hall on the UC campus.
In August 1997, after Moon had allegedly failed to perform his responsibilities for a meal set-up for UC's football team, Compass terminated Moon, who was then fifty-six years old. Believing that he had really been terminated because of his age, Moon filed a lawsuit against Compass. He brought age-discrimination claims under federal and Ohio law,[1] as well as a claim for intentional infliction of emotional distress.
Compass responded that it had terminated Moon because, among other things, he had not satisfactorily performed his job duties. It claimed that the termination had nothing to do with Moon's age. The trial court agreed and granted summary judgment for Compass.
Moon now appeals. He asserts two assignments of error. The first assignment challenges the court's granting of summary judgment. The second assignment challenges an evidentiary ruling made by the court in deciding the summary-judgment motion. For the sake of clarity, we address the second assignment first.
 II. Motion to Strike
The second assignment involves a motion filed by Compass to strike an affidavit filed by Moon in opposing Compass's motion for summary judgment. Murwin Dooley, a former production manager for Compass, wrote the affidavit. Dooley stated that, prior to Moon's termination, he overheard two Compass supervisors, Donna Allridge and Deborah Parker, making age-related comments about employees. Specifically, paragraph two of Dooley's affidavit stated, "About a year ago, I was in Sander Hall by the salad bar and heard Deborah Parker and Donna Allridge talking about getting `young blood' in the company `to juice up the company.' Just before this statement, I heard one of them mention the name of Clyde Moon." In its motion to strike, Compass argued that the statements quoted by Dooley were inadmissible hearsay. The trial court granted the motion as to the second paragraph of the affidavit. Moon now asserts that the court erred in that determination. According to Moon, the statements were admissions of agents of a party opponent and thus admissible under Evid.R. 801(D)(2)(d). We disagree.
Evid.R. 801(D)(2)(d) provides that a statement is not hearsay if it is "offered against a party and is * * * a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." In Hill v. Spiegel, Inc., the United States Court of Appeals for the Sixth Circuit held that statements made by managers in an age-discrimination case were not admissible under Fed.R.Evid. 801(D)(2)(d), which is similar to the Ohio rule, where the managers were not decisionmakers involved with the termination of the plaintiff. The court explained that the statements did not concern matters within the scope of the managers' employment.[2]
Here, Dooley was ambiguous about whether Allridge or Parker made the statements alleged in the affidavit. The ambiguity was significant because, although both Allridge and Parker were supervisors, only Allridge was a decisionmaker regarding Moon's termination. Allridge, the resident manager for Compass, was Moon's boss. She evaluated Moon and made the decision to terminate him. Parker was an operations manager, directly below Allridge in the chain of command. Moon was supposed to report on operational matters through Parker to Allridge. But there is no evidence that Parker played any part in the decision to terminate him. Considering that Dooley's affidavit was unclear as to whether Allridge or Parker made the alleged age-related statements, we hold that the trial court did not abuse its discretion in granting the motion to strike. If Parker made the statements, then they would have been inadmissible hearsay. Like the statements in Hill, the statements would not have been admissible under Evid.R. 801(D)(2)(d) because they would not have been made by a decisionmaker.
Furthermore, paragraph two lacked trustworthiness because Dooley did not quote the entire conversation between Allridge and Parker. He only quoted portions of it. He stated that he had heard either Allridge or Parker "mention" Moon. But he did not specify the context in which Moon was discussed. Moon may not have been "mentioned" in the context of the age-related comments allegedly made by Allridge or Parker — since Dooley did not relate the entire conversation, the affidavit is unclear in this respect. Because of this vagueness, paragraph two may not have been relevant, which is further support for the trial court's decision to grant the motion to strike. We reject Moon's second assignment.
 III. Summary Judgment
In Moon's first assignment, he asserts that the trial court erred in granting Compass's motion for summary judgment on his age-discrimination claims. (Moon does not challenge the ruling regarding the intentional-infliction-of-emotional-distress claim.) A summary-judgment motion is appropriately granted if the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[3] Appellate review of a lower court's entry of summary judgment is de novo.[4]
 A. Moon's Position
In asserting that the trial court erred in granting summary judgment, Moon sets forth evidence and various arguments that he claims create a genuine issue of material fact. He initially points out that, over his years of employment, he received pay increases and favorable evaluations.
He also points to statements allegedly made by Jeffrey Lataille, a regional vice president of Compass. Lataille was Allridge's boss and was one of the people required to approve Allridge's decision to terminate Moon. One former Compass general manager, Nick Ranieri, testified that Lataille told him around March 1996 that Moon was "being paid too much money" and was "too old" to be a manager at UC. A former resident manager, Michael Moeller, testified that Lataille said to him that Moon was overpaid. Moeller also stated that Lataille said that Compass had too many "old guys" at UC and needed to get some "fresh young blood and ideas." Also, Compass's marketing manager, Karen Biddle, testified that she had once had a conversation with Lataille and Ranieri where she and Ranieri had told Lataille their ages (both older than forty), and Lataille had expressed surprise and stated, "I didn't realize we had so many old people on this campus." Biddle explained that she believed that Lataille was more supportive of younger people. She based this belief on the fact that other older managers in the region, whom she considered to be good employees, had been terminated.
Moon also argues that Allridge treated him differently than the other general managers, all of whom were younger. (There were three other general managers at UC when Moon was terminated: one was twenty-six years old, one was twenty-seven, and one was forty-eight.) Moon claims that Allridge "nitpicked" him and criticized him in front of his subordinates more than she did with the others. Also, he points out that in 1997 he received warnings for problems — one for not completing a budget and one for attending a food show without informing Allridge — where he was threatened with termination if the problems continued. He claims that other general managers committed similar violations, but were not threatened with termination.
In addition, he claims that he was unfairly blamed for the incident that directly led to his termination. The incident was a set-up for a meal for the football team in the Shoemaker Center in August 1997. Moon was not present at the set-up because he was out of town. But he was assigned certain responsibilities before he left. According to Compass, Moon was to make arrangements for equipment to be moved to Shoemaker and to prepare a diagram for another employee, Glenn Spencer, of how Shoemaker was to be set up. Compass claims that Moon failed to perform these duties, which created several last-minute problems for the staff. But Moon counters that his orders were unclear and that he adequately performed what he considered his duties to be. He claims that he showed Spencer where things needed to be set up and that Spencer had assured him that the equipment was already in place.
According to Moon, the blame he received for the problems with the set-up was really a pretext for Compass's true reason for terminating him: age discrimination. As further evidence of this pretext, he argues that Compass failed to follow standard procedures when it terminated him. For instance, contrary to policy, Moon claims, Compass did not conduct a proper fact-finding investigation before the termination.
 B. Compass's Position
In response, Compass argues that Moon's performance was not as satisfactory as he would have us believe. Compass stresses the two instances where Moon committed infractions that were serious enough that he was threatened with termination if they continued. One, in April and May 1997, involved budget preparation. According to Compass, although Moon was provided with training and extra assistance on how to complete a budget, he refused to complete one, and Allridge had to do it for him. The second instance, in May 1997, involved a "food show" convention in Chicago attended by Moon, where Compass reprimanded Moon for failing to satisfactorily make sure that his responsibilities were covered while he was away. Compass claims that, when Allridge questioned Moon about the convention, he was insubordinate and combative toward her. According to Allridge, this attitude was typical of his relationship with her. Compass stresses that the incidents surrounding the football meal set-up involved the same infractions as those for the convention — Moon's lack of communication and failure to ensure that his duties were completed while he was away from work.
According to Compass, Moon's arguments in support of his age-discrimination claims, such as that he was treated poorly compared to younger general managers, are baseless. Compass argues that Moon has not created a nexus between his termination and his age. The decision to terminate Moon, Compass claims, was merely a business decision based on Compass's judgment that Moon had repeatedly failed to satisfy Allridge's expectations for his performance.
 C. Legal Analysis
Considering the arguments and evidence, we must decide if a genuine issue of fact exists regarding whether Compass violated either the federal or the Ohio discrimination statutes, both of which prohibit employers from discharging employees because of their age.[5] The ultimate issue is whether age was a determining factor in the discharge. To prove discrimination, Moon relies on two methods of proof: (1) showing discriminatory intent with direct evidence, and (2) establishing intent indirectly under what is known as the McDonnell Douglas standard. We hold that a genuine issue of fact does not exist under either standard.
 1. Direct Evidence
Direct evidence is a method of proof where a plaintiff can establish a prima facie case of age discrimination directly "by presenting evidence, of any nature, to show that the employer more likely than not was motivated by discriminatory intent."[6]
Under this standard, Moon focuses on the age-related statements allegedly made by Lataille. The general rule is that age-related comments referring directly to a worker may support an inference of age discrimination. But isolated and ambiguous comments are too abstract to support a finding of discrimination.[7] Here, the majority of Lataille's alleged comments were abstract: they were directed to older workers in general or to other older employees, but not to Moon in particular. Or they did not refer to Moon's age.
The only comment that directly referred to Moon's age was the one quoted by Ranieri, where Lataille allegedly said that Moon was "being paid too much money" and was "too old" to be a manager at UC. But we hold that this comment does not support an inference of discrimination. In addition to being an isolated comment in subject matter in that it was the only one that directly referred to Moon, it was also isolated in time because it was allegedly made around March 1996, over one year before Moon was terminated. Also, although Lataille was a decisionmaker in that he approved Moon's termination, the evidence shows that the actual decision to terminate Moon came solely from Allridge. There is no evidence to reasonably infer that Lataille influenced Allridge.
In fact, regarding Allridge's decision, there is no evidence to connect Moon's termination with any age-related bias on Allridge's part. The evidence reveals that Allridge had legitimate criticisms with Moon's performance. Contrary to Moon's suggestion that he had always successfully performed his duties in the past, his evaluations revealed otherwise. Although Moon was generally rated satisfactory in many areas and in overall performance, evaluations going back to 1993 showed that he had problems in certain areas. Areas where he struggled included "Communication" and "Budgetary Planning and Control." These were the problems that manifested themselves in 1997 when he was disciplined for failing to complete his budget and for failing to make sure that his responsibilities were covered when he attended the convention in Chicago.
We reject Moon's argument that Allridge "nitpicked" him and criticized him in front of subordinates more than she did with other younger general managers. First, although the record reveals that Allridge was not shy about expressing her concerns about Moon's performance to him, her criticisms, which involved legitimate business concerns such as the budget and Moon's lack of communication with the staff, could not reasonably be considered "nitpicking." The fact that Allridge might have expressed more concerns to Moon than to other general managers could simply be because Moon had performance problems that the other general managers did not have. Second, Allridge did not unfairly criticize Moon in front of subordinates. The record reveals that she merely expressed concern with shortcomings in his performance and in his unit that she believed needed to be addressed to him and his workers. Although it might have been better practice to address Moon about these issues in private, Allridge's method of addressing her concerns can hardly support an inference of discrimination. We are here to determine whether there is evidence of discrimination, not to review the "fairness" of Moon's treatment.[8]
In addition, Moon's claim that he was threatened with termination for certain violations while the younger general managers were not given similar threats for similar violations is specious. Moon's deficiencies involved a failure to prepare a budget and a failure to ensure that his responsibilities were covered when he was at the convention in Chicago. Allridge wrote the warnings for these violations. She specifically noted Moon's lack of communication with her: failing to respond to her requests to complete a budget and failing to communicate with her regarding the convention. On the other hand, Parker, not Allridge, wrote the warnings that the other general managers received. None of the violations involved failures to complete budgets. Rather, they involved failures to oversee set-ups, failures to follow company policies, such as those regarding product usage and storage, and a failure to provide requested products for catering.
We conclude that an inference of discrimination cannot be drawn from the fact that Moon was threatened with termination for his violations, while others were not. Unlike the other general managers, Moon's violations specifically involved his ongoing problem of lack of communication with Allridge, a problem that the other general managers did not have. Compass had a right to deal more strongly with higher degrees of violations, and the record reveals that Moon's violations were more serious — or at least what Compass considered in its business judgment to be more serious than those of the other general managers. Considering also that Moon's discipline came from Allridge, while the others' warnings came from Parker, we conclude that Moon was not similarly situated to the younger employees with respect to the warnings that he received. An inference of age discrimination cannot reasonably be made under these circumstances.[9]
Finally, we reject Moon's claim regarding being unfairly blamed for the set-up problems of the football meal. The record shows that, after the incident occurred, Allridge conducted an investigation to determine the roots of the problem, with various employees involved with the set-up being questioned. The investigation revealed that it was at the very least arguable that Moon had shirked responsibilities given to him regarding setting up equipment for the meal. The particulars of the problem do not concern us unless they are relevant to age discrimination. If they involve business decisions calling for business judgment, the court cannot second-guess the results, even if we believe they were unfair. Here, we find no evidence of discrimination.
We note that loyal twenty-seven-year employees are hard to find. Most companies do not dismiss a good employee without cause. But Ohio is not a "just cause" state. In this case, we are limited to the issue of age discrimination. We conclude that the evidence presented by Moon, even when all of it is considered together, does not create a genuine issue of fact under the direct-evidence standard. It is possible that certain aspects of the termination may have been handled better, but Moon has not established that such shortcomings were related to his age.
 2. McDonnell Douglas Standard
We also hold that Moon has not shown a genuine issue of material fact under the McDonnell Douglas standard. Under that standard in a discharge case, the plaintiff must first establish aprima facie case of discrimination. This is done by showing (1) that he or she was a member of a statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by a person not belonging to the protected class. Once the employee has established a prima facie case, a presumption of discrimination exists and the burden shifts to the employer to rebut that presumption. If the employer comes forward with a nondiscriminatory reason for the discharge, the employee must produce sufficient evidence from which a fact-finder could reasonably reject the employer's explanation. The employee must show either that the employer's proffered reasons had no basis in fact, that the reasons did not actually motivate the discharge, or that the reasons were insufficient to motivate the discharge.[10]
Here, regarding Moon's prima facie case, Compass does not challenge that Moon's age made him a member of a statutorily protected class. Compass also does not challenge that Moon was discharged. But Compass does challenge Moon's claim that he was qualified for his position. To prove that he was qualified, Moon must show that he was performing his job "at a level which met his employer's legitimate expectations."[11] Moon argues that favorable evaluations, pay increases, and his long years of service as a general manager establish that he was qualified. Also, he relies on an affidavit of Frank H. Bowen, Jr., UC's assistant vice president for auxiliary services, who stated that he had the "highest satisfaction" with Moon's work.
As we already suggested under the direct-evidence standard, we conclude that Moon was not meeting Compass's legitimate expectations. He had consistently had problems in certain areas, such as communication, and in 1997, he was twice threatened with termination if the problems continued. Although Moon had worked for Compass for a long time and had received pay increases and generally satisfactory evaluations, we conclude that these facts should not be allowed to conceal the problems that he had with the company. Moon's general assertions do not create a genuine issue of material fact that he was qualified for his position. And Bowen's affidavit does not change our decision. Bowen worked for UC, not Compass. He was a customer, not a decisionmaker, in this case. While he may have been satisfied with Moon, this does not mean that Compass was also satisfied. His opinion does not create a genuine issue of material fact.[12]
But even if Moon was "qualified" for the job, we also hold that he was not replaced by a person not belonging to the protected class, the fourth prong of McDonnell Douglas's primafacie framework. To satisfy the fourth prong, there must be a sufficient disparity in ages between the plaintiff and his or her replacement. Here, Moon was replaced by a woman who was less than ten years younger — a woman who was forty-six when he was terminated. In view of the lack of evidence in the record that Compass believed Moon's age to be significant, we hold that there was not a sufficient disparity between Moon's age and that of his replacement.[13] We hold that Moon has not established aprima facie case under McDonnell Douglas. A genuine issue of fact does not exist.
And, even if a prima facie case could be established, we hold that Moon could not show that Compass's reasons for terminating him were pretextual. Moon claims that he was given unclear instructions for the football set-up. We agree that there might have been some confusion about exactly what Moon's responsibilities were. But, as we have already explained under our direct-evidence analysis, Allridge conducted an investigation of why the problems with the football set-up occurred. Based on the investigation, Allridge concluded that Moon had committed various infractions. Considering Moon's past performance problems and previous warnings, Allridge determined that he should be fired. Based on our review of the record, we conclude that the court should not second-guess Allridge's business judgment. We hold that a genuine issue of material fact does not exist regarding pretext.
Therefore, we hold that Moon has not shown a genuine issue of material fact under the McDonnell Douglas standard. We overrule Moon's first assignment, and affirm the trial court's judgment.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
Please Note:
The court has recorded its own entry on the date of the release of this Decision.
[1] See Section 623, Title 29, U.S.Code; R.C. 4112.02(N) and4112.99.
[2] Hill v. Spiegel, Inc. (C.A.6, 1983), 708 F.2d 233, 236-237.
[3] Civ.R. 56(C).
[4] McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491,609 N.E.2d 1272, 1274.
[5] See Section 623(a)(1), Title 29, U.S.Code; R.C. 4112.02(A).
[6] Byrnes v. LCI Communication Holdings Co. (1996), 77 Ohio St.3d 125,128-129, 672 N.E.2d 145, 148.
[7] See, e.g., id. at 129-130, 672 N.E.2d at 148-149; Phelps v.Yale Sec., Inc. (C.A.6, 1993), 986 F.2d 1020, 1025-1026.
[8] See Wheelwright v. Clairol, Inc. (S.D.Ohio 1991),770 F. Supp. 396, 399-400 (a bad supervisor is not evidence of age discrimination).
[9] See Mitchell v. Toledo Hosp. (C.A.6, 1992), 964 F.2d 577,583 ("to be deemed `similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"); see, also,Ercegovich v. Goodyear Tire Rubber Co. (C.A.6, 1998),154 F.3d 344, 352 ("the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in `all of the relevant aspects'" [citations omitted]).
[10] See Byrnes, supra, at 128, 672 N.E.2d at 148; Manzer v.Diamond Shamrock Chems. Co. (C.A.6, 1994), 29 F.3d 1078,1079-1084.
[11] See McDonald v. Union Camp Corp. (C.A.6, 1990),898 F.2d 1155, 1160 (citations omitted).
[12] See Franklin v. Greenwood Mills Marketing Co. (S.D.N Y 1983), 33 F.E.P.Cases 1847, 1854.
[13] See, e.g., Hartley v. Wisconsin Bell, Inc. (C.A.7, 1997),124 F.3d 887, 893 (ten years is a presumptively sufficient disparity).